# 23-1078-cv

## United States Court of Appeals

*for the*

## Second Circuit

MICHAEL GRECCO PRODUCTIONS, INC.,

*Plaintiff-Appellant,*

— v. —

RADESIGN, INC., DAVIS BY RUTHIE DAVIS, INC.,
RUTHIE ALLYN DAVIS, RUTHIE DAVIS, INC., DOES 1-5,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

EMILY KIRSCH
PAUL NIEHAUS
CRAIG TARASOFF
KIRSCH & NIEHAUS PLLC
*Attorneys for Defendants-Appellees*
950 Third Avenue, Suite 1900
New York, New York 10022
(646) 415-7530

CP COUNSEL PRESS    (800) 4-APPEAL • (324974)

# DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellees Ruthie Davis, Inc., RADesign, Inc., and Davis by Ruthie Davis, Inc., by and through its undersigned counsel, each hereby certifies that it has no parent corporation and that no publicly held corporation owns 10% more of its stock.

KIRSCH & NIEHAUS PLLC

*/s/ Emily B. Kirsch*
Emily B. Kirsch
950 Third Avenue, Suite 1900
New York, NY 10022
(212) 832-0170
Emily.kirsch@kirschniehaus.com

*Attorneys for Appellees Ruthie Davis, Inc., RADesign, Inc., Davis by Ruthie Davis, Inc., and Ruthie Allyn Davis*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................................... 1

STATEMENT OF THE CASE .............................................................. 2

    I.     INTRODUCTION ............................................................. 2

    II.    PROCEDURAL HISTORY ................................................... 2

    III.   FACTS ........................................................................ 3

           A.     Plaintiff-Appellant MGP Is a Seasoned Copyright
                  Infringement Litigator, Whose Principal and Sole
                  Shareholder, Michael Grecco, Holds Himself Out as an
                  Important Industry Expert on Identifying and
                  Enforcing Copyright Infringements Online ................ 3

           B.     Defendant RADesign, Inc. ........................................ 4

           C.     The Alleged Infringement Occurs More Than Three
                  Years Prior to the Filing of the Complaint ................. 5

           D.     The District Court Opinion Correctly Dismisses the
                  Complaint as Time-Barred ....................................... 6

SUMMARY OF ARGUMENT ............................................................. 8

ARGUMENT ............................................................................... 11

    I.     STANDARD OF REVIEW ................................................. 11

    II.    THE DISTRICT COURT WAS CORRECT IN
          DISMISSING APPELLANT'S COPYRIGHT CLAIM AS
          TIME-BARRED ............................................................ 13

           A.     The Copyright Act Statute of Limitations and the
                  Discovery Rule ....................................................... 13

           B.     MGP Did Not Allege a Plausible Viable Cause of
                  Action .................................................................. 18

C.    The District Court's Dismissal Is Consistent with this Circuit's Discovery Rule Jurisprudence ...................................19

D.    Contrary to MGP's Arguments, the District Court's Opinion Does Not Hold MGP to a New or Different Accrual Standard.............................................................23

    1.    MGP's Status as Sophisticated Litigant is Relevant ...........................................................23

    2.    "Storm Warnings" Are of Limited Use in this Case of Open and Notorious Infringement....................25

    3.    Courts Have Acknowledged That a Sophisticated Enforcer of Copyrights May Be Charged with Immediate Constructive Knowledge of Open Infringements ...................................................28

III.    MGP'S REFERENCE TO THE CELEBRITY ARCHIVE PAGE IS NOT A SEPARATE ACCRUAL .......................................31

CONCLUSION .........................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................9, 12, 22

*Bd. Of Regents of Univ. of State of N.Y. v. Tomanio*,
446 U.S. 478 (1980).................................................................. 13-14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................*passim*

*Bell v. Oakland Pools Project, Inc.*,
2020 WL 4458890 (N.D. Cal. May 4, 2020)..................................31

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014) .........................................................12

*Chavez v. Occidental Chem. Corp.*,
933 F.3d 186 (2d Cir. 2019) .........................................................13

*Design Basics, LLC v. Roersma & Wurn Builders, Inc.*,
2012 WL 1830129 (W.D. Mich. 2012) .........................................25

*Energy Intelligence Group, Inc. v. CHS McPherson Refinery*,
300 F. Supp. 3d 1356 (D. Kan. 2018) ....................................24, 26

*Frerck v. John Wiley & Sons, Inc.*,
2014 WL 3512991 (E.D. Pa. July 14, 2014) .................................25

*Gaffney v. Muhammed Ali Enter., LLC,*
2021 WL 3542256 (S.D.N.Y. Aug. 10, 2021) .............................20

*Goldstein v. Pataki*,
516 F.3d 50 (2d Cir. 2008) .........................................................24

*Hirsch v. Rehs Galleries, Inc.*,
2020 WL 917213 n.4 (S.D.N.Y. Feb. 26, 2020) .............................19, 29, 30

*Homeless Patrol v. Joseph Volpe Fam.*,
425 F. App'x 60 (2d Cir. 2011)....................................................23

*In re Livent, Inc. Noteholders Sec. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) .........................................12

iii

*Iselin v. United States*,
  270 U.S. 245, (1926) .......................................................................15

*Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*,
  23 F. Supp. 3d 344 (S.D.N.Y. 2014) ................................................24

*Lixenberg v. Complex Media, Inc.*,
  2023 WL 144663 (S.D.N.Y. Jan. 10, 2023) ......................................20

*Masi v. Moguldom Media Grp. LLC*,
  2019 WL 3287819 (S.D.N.Y. 2019) .................................................29

*Melendez v. Sirius XM Radio, Inc.*,
  50 F.4th 294 (2d Cir. 2022) .............................................................11

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010) ...................................................................26, 27

*Michael Grecco Prods., Inc. v. BDG Media, Inc.*,
  834 F. App'x 353 (9th Cir. 2021) .....................................................21

*Mills v. Habluetzel*,
  456 U.S. 91 (1982) ..........................................................................13

*Minden Pictures, Inc. v. Complex Media, Inc.*,
  2023 WL 2648027 (S.D.N.Y. Mar. 27, 2023) ....................................20

*Minden v. Buzzfeed, Inc.*,
  390 F. Supp. 3d 461 (S.D.N.Y. 2019) .......................................20, 23-24

*Nealy v. Warner Chappell Music, Inc.*,
  60 F.4th 1325 (11th Cir. 2023) ........................................................17

*Nichols v. United States*,
  578 U.S. 104 (2016) .........................................................................15

*Parisienne v. Scripps Media, Inc.*,
  2021 WL 3668084 (S.D.N.Y. 2021) ............................................28, 29

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014) ..........................................................13, 14, 17, 31

*PK Music Performance v. Timberlake*,
  2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018) .........................19, 20, 21

*Psihoyos v. John Wiley & Sons, Inc.,*
    748 F.3d 120 (2d Cir. 2014) ..................................................14, 19

*Rotella v. Wood*,
    528 U.S. 549 (2000)............................................................13

*Rotkiske v. Klemm*,
    589 U.S. --, 140 S. Ct. 355, 360 (2019).....................................15, 16

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC.,*
    580 U.S. 328 (2017)...........................................................15

*Sewell v. Bernardin*,
    795 F.3d 337 (2d Cir. 2015) ...................................................11

*Sohm v. Scholastic, Inc.,*
    959 F.3d. 39 (2d Cir. 2020) ................................................16, 17

*Staehr v. Hartford. Fin. Servs. Grp.,*
    547 F.3d 406 (2d Cir. 2008) ...................................................11

*Starz Entm't, LLC v. MGM Domestic Television Distrib., LLC,*
    39 F.4th 1236 (9th Cir. 2022) .............................................14, 17

*Stokes v. Honeydu, Inc.,*
    2023 WL 2628685 (S.D.N.Y. Feb. 9, 2023) ....................................21

*TechnoMarine SA v. Jacob Time, Inc.*,
    2012 WL 2497276 n.1 (S.D.N.Y. June 22, 2012) ..............................12

*Tompkins v. AlliedBarton Sec. Servs.*,
    424 F. App'x 42 (2d Cir. 2011) ................................................23

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)............................................................15

*Warner Chappell Music, Inc. v. Nealy*,
    No. 22-1078, 2023 WL 6319656 (Mem).....................................16, 17

*William A. Graham Co. v. Haughey*,
    568 F.3d 425 (3d. Cir. 2009) ..............................................25, 26

*Wu v. John Wiley & Sons, Inc.,*
    2015 WL 5254885 (S.D.N.Y. Sept. 10, 2015) .................................27

**Statutes and Other Authorities:**

15 U.S.C. § 1692(k)(d) ............................................................ 16

17 U.S.C. § 507(b) ....................................................... 13, 14, 16

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1338(a) .................................................................. 1

Fed. R. Civ. P. 12(b)(6) ..................................................... *passim*

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94
(2012) ................................................................................ 15

"How (and Why) To Make Copyright Registration Part of Your
Workflow", Photo District News October 12, 2015 .................... 3, 4

# JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1338(a) (acts of Congress relating to copyrights). This Court has appellate jurisdiction over the June 20, 2023 Order and July 19, 2023 Final Order appealed from pursuant to 28 U.S.C. §1291.

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did a copyright owner plausibly plead a timely copyright infringement claim, where:

   - the owner is a seasoned litigator having filed more than 130 copyright infringement lawsuits;

   - its complaint touts its expertise, advanced technological tools, industry leadership and successful business model for protecting and enforcing its copyrights, including systematically searching the internet for infringements; and

   - the owner pleads only that it discovered the infringement more than three years after the date of infringement but pleads no fact tending to explain or justify why it could not or should not have been able to identify the alleged open and notorious internet infringement earlier.

   *Suggested Answer:* No.

2. Did a copyright owner plausibly plead a timely infringement claim when it pleaded that the alleged infringer began its uses on August 16, 2017, more than three years prior to filing of the lawsuit, and "continued thereafter," and that one image was republished on the "celebrity archives" page of the alleged infringer's website.

*Suggested Answer:* No.

## STATEMENT OF THE CASE

### I. INTRODUCTION

Defendants/Appellees seek affirmance of the June 20, 2023 Order and the Final Order dated July 19, 2023 by the Honorable Ronnie Abrams, United Sates District Court Judge for the Southern District of New York. The lower court's order and opinion was published as *Michael Grecco Prods. Inc. v. RADesign, Inc..,* No. 21-CV-8381 (RA) --- F. Supp. 3d ---, 2023 WL 4106162 (S.D.N.Y. June 20, 2023).

### II. PROCEDURAL HISTORY

MGP filed its Complaint on October 12, 2021. The Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which was fully submitted as of February 10, 2022. The District Court granted Defendants' motion to dismiss on June 20, 2023. [A 101-110]. The District Court did so with leave to replead within thirty days "provided [MGP] has a good faith basis" to allege "a

separately occurring act of distribution or publication of the Rose Photographs which would bring a copyright claim within the three-year limitations period." [A 109-110]. On July 17, 2023, MGP declined to replead with any additional facts that would bring its claim within the three-year limitations period and on July 19, 2023, filed its notice of appeal.

## III. FACTS

### A. Plaintiff-Appellant MGP Is a Seasoned Copyright Infringement Litigator, Whose Principal and Sole Shareholder, Michael Grecco, Holds Himself Out as an Important Industry Expert on Identifying and Enforcing Copyright Infringements Online.

Michael Grecco ("Grecco") is the principal and sole shareholder of plaintiff-appellant Michael Grecco Productions, Inc. ("MGP"). In addition to his role as a photographer, Grecco is a self-proclaimed copyright expert whose "reputation for professional service turns, in part, on his efforts to educate photographers concerning the benefits of copyright registration as a way to combat the pandemic of image piracy that accompanied the rise of the internet." [A 008]. MGP's Complaint specifically cites to and quotes from an article in the October 12, 2015 issue of Photo District News titled "How (and Why) To Make Copyright Registration Part of Your Workflow" (the "PDN Article"), which consists of an interview with Grecco "concerning his system of routine copyright registration procedures for the benefit of the industry to combat content theft." [A 008, 044-046].

MGP admits that its income is more dependent on collections from infringement than from its photography practice: "My collections for infringement far surpass revenues I was getting ten years ago for my syndication and creative stock, when that market was a viable market." [A 045].

MGP also holds itself out as an expert in many aspects of the copyright law and practice, touting that Grecco "leads workshops, addresses conferences and has released an educational video to assist artists in protecting their intellectual property from on-line content piracy." [A 009]. In the PDN Article, Grecco explains step by step how to systemize the registration of photographs with the copyright office in order to ensure that the photographer is poised to bring a lawsuit against a potential infringer as soon as the infringement is noted. [A 045].

Grecco "spends time and money to actively search for hard to detect infringements and enforces his rights under the Copyright Act." [A 008]. At least as early as October 2015 MGP used "a service, imagerights.com, to troll the internet for unauthorized uses of his images." [A 045]. As of January 2022, MGP had brought one hundred and thirty-four (134) copyright infringement cases since 2010. [A 050-130].

## B. Defendant RADesign, Inc.

Ruthie Davis is the owner and president of RADesign, Inc., a designer and manufacturer of high fashion shoes, worn by many well-known celebrities. [*See* A

098-099]. Ruthie Davis shoes are known for their chic, modern and trendy style and are referred to as architectural art. Ms. Davis is an acclaimed designer and entrepreneur and is proud to be a woman who designs to empower women. Ruthie Davis designed and manufactured the shoes worn by Amber Rose for the August 2017 Inked Magazine cover shoot. [A 101-102].

### C. The Alleged Infringement Occurs More Than Three Years Prior to the Filing of the Complaint

The images at issue of celebrity Amber Rose on the cover of Inked Magazine (the "Rose Photographs") feature Ms. Rose wearing a pair of Ruthie Davis shoes that were specially created at the request of the magazine's stylist for purposes of the shoot alone; the printed credit given to Ruthie Davis as branding publicity was to be understood compensation for providing the shoes. [*See,* A 032, 34]

MGP alleges that it created the Rose Photographs on or about January 31, 2017. As such, MGP was aware that it was photographing Ms. Rose and the Rose Photographs as published credited Ms. Rose, her stylist, her dress designer and her shoe designer. [*See* A 010; A 032]. The Rose Photographs were then published several months later in the August 2017 issue of Inked Magazine. [*See* A 010, 011, 032]. MGP registered its copyright in the Rose Photographs two years later, effective on February 19, 2019. [A 010]. MGP claims to have first discovered the images displayed on the Ruthie Davis website under a non-commercial tab titled

"Celebrities," on or about February 8, 2021 and that such images were posted in August 2017. [A 011-12]. The Complaint further alleges that Defendant published a tweet including one of the Rose Photographs on August 16, 2017. [A 011, A 032].

The Complaint alleges that MGP discovered the alleged infringing internet posts on February 8, 2021. [A 012]. The Complaint alleges no facts explaining how the discovery was made. The only reasonable inference is that MGP discovered the alleged infringements in the course of its regular, systemized image searches for all its images, its business model which is explained in detail in the Complaint and the documents incorporated by reference. The alleged infringements are publicly available internet postings. [*See* A 009, A 031-035]. There is no fact alleged suggesting that the alleged infringements were confidential or difficult to detect. There is no fact alleged tending to explain why this expert plaintiff, with its advanced technology and business model of scouring the internet, should not have identified the alleged infringements within three years of their posting.

### D. The District Court Opinion Correctly Dismisses the Complaint as Time-Barred

The District Court dismissed MGP's complaint as of June 20, 2023 as barred by the statute of limitations. The Court acknowledged that the Second Circuit follows the Discovery Rule and accepted as true that for purposes of the motion the allegations that: "(1) Defendant's use of the Rose Photographs on their website began on August 16, 2017, and 'continued thereafter'", *Compl. ¶30*; (2) plaintiff

6

"discovered the infringement on February 8, 2021," *id. ¶31*; and (3) plaintiff filed this copyright infringement action on October 21, 2021 … more than four years after the alleged infringing publication of the Rose Photographs on Defendants' website and Twitter profile." [A 104].

The Court did not disregard the allegation that MGP actually discovered the alleged infringement in February 2021, but concerned itself more with the portion of the Discovery Rule that asks *when* the plaintiff *should* have discovered the infringement. The Court found that MGP's "relative sophistication as an experienced litigator in identifying and bringing causes of action for unauthorized uses of Grecco's copyrighted works leads to the conclusion that it should have discovered, with the exercise of due diligence, that the Rose Photographs were posted within the three-year limitations period." [A 104]. The District Court took judicial notice of the fact that MGP is a seasoned litigator who had filed "134 separate copyright infringement cases between 2010 and 2022". [A 105]. But even "setting aside the 130-plus infringement lawsuits previously filed," the District Court supported its finding that it was implausible MGP could not have identified the alleged infringements in light of its own pleadings. [A 108]. "[T]he face of the complaint alleges that [MGP] was particularly sophisticated in regularly seeking out and discovering online infringing uses. It alleges, among other things, that Grecco 'leads workshops, addresses conferences and has released an educational video to

assist artists in protecting their intellectual property from on-line content piracy'…

and that Grecco 'spends time and money to actively search for hard-to-detect

infringements', and that he even described these methods in an interview providing

a how-to guide to prospective copyright infringement claimants." [A 107]. The

District Court's reasoning is sound in relying on MGP's own allegations in finding

that "it is clear from the face of the complaint that plaintiff's claims are barred as a

matter of law." [A 108].

## SUMMARY OF ARGUMENT

The District Court was correct in dismissing the Complaint for failure to state

a viable claim and should be affirmed.

The statute of limitations for a copyright infringement claim is three years.

Under the "Discovery Rule" as adopted by the Second Circuit, a copyright claim

does not accrue until the copyright owner discovers, or with reasonable diligence

should have discovered, the alleged infringement. Though the Discovery Rule is the

law of this Circuit and elsewhere, the Supreme Court has not approved its

applicability, has instead itself applied the Injury Rule (pursuant to which a

copyright claim accrues at the time of the infringement), and has cautioned that it

will not import a Discovery Rule into a statute of limitations if so doing risks

enlargement, or other contradiction of congressional intent.

Against this backdrop, MGP pled simply that an infringement took place on August 16, 2017, but that MGP did not discover the infringement until three and a half years later, on February 9, 2021. MGP then brought suit in October 2021. MGP pled no facts to suggest why, with the exercise of reasonable diligence, it did not discover or could not have discovered the infringement sooner.

To the contrary, MGP pled myriad facts from which the only reasonable inference is that it could and should have discovered the infringement within the three-year period following the infringement. MGP pled that the infringement was on a publicly available web site and not hidden or confidential. MGP pled that it is a sophisticated, experienced, well-known industry leader in searching the internet for content piracy using advanced technological tools. MGP pled that it actively and systematically enforces its copyrights in this way, evidenced by the more than 130 copyright infringement lawsuits it has brought of which the District Court properly took judicial notice. It is simply not plausible that with the exercise of some diligence, MGP could not have discovered the open and notorious infringement sooner.

By this appeal, MGP asks this Court to relieve copyright holders of the reasonable diligence requirement inherent in the Discovery Rule. It also asks this Court to disregard the well settled pleading standards of *Twombley* and *Iqbal*, which require a plaintiff to allege facts sufficient to describe a plausible entitlement to

relief. MGP itself pled facts requiring an inference that it could and should have discovered the infringement sooner.  It is not for a court to try to imagine a set of facts that might be consistent with relief; it is incumbent on MGP to explain why, contrary to the facts alleged and inferences drawn, it could not have discovered the infringement sooner in order to properly invoke the Discovery Rule.

MGP's confusion of several related doctrines cannot overcome these straightforward principles. It is hornbook law that if a claim is untimely on its face, it may be dismissed on the pleadings. MGP has not been asked to anticipate and plead around an affirmative defense. It has pled a stale claim which could only have been saved by pleading facts in support of the second part of the discovery rule: that despite all facts to the contrary, MGP could not have known of the infringement sooner.

Similarly, MGP's reliance on the so-called storm warning cases is overblown. Storm warnings are useful to determine when a duty to investigate a potential, difficult to detect infringement arises. Here it is irrelevant because MGP by its own pleading was already investigating.

MGP's invitation to extend and expand the already questionable Discovery Rule should be declined. To do otherwise and allow *this* sophisticated expert to bury its head in the sand until it is ready to sue without having to explain why or exercise reasonable diligence contravenes the stated policies of all statutes of limitations. No

defendant would ever have any certainty, and many would have to defend or settle claims where exculpatory evidence that may have existed is long since gone. The District Court correctly applied the Discovery Rule as it stands today consistent with this Circuit's jurisprudence and known policies and should be affirmed.

## ARGUMENT

### I.    STANDARD OF REVIEW

The appellate court reviews *de novo* the grant of a motion to dismiss under Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Melendez v. Sirius XM Radio, Inc.,* 50 F.4th 294, 298 (2d Cir. 2022). "Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when a defendant raises a statutory bar such as lack of timeliness as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (citing *Staehr v. Hartford. Fin. Servs. Grp.,* 547 F.3d 406, 425 (2d Cir. 2008)) (internal quotation marks omitted).

For a complaint to survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not due." *Twombly*, 550 U.S. at 555 (internal quotations marks and citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

While the Court is generally required, on a motion to dismiss, to accept a complaint's factual allegations as true, the Court "need not feel constrained to accept as truth conflicting pleadings that make no sense . . . or that are contradicted either by statements in the complaint itself[,] or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (collecting cases); *see also TechnoMarine SA v. Jacob Time, Inc.*, 2012 WL 2497276, at *1 n.1 (S.D.N.Y. June 22, 2012) (court may consider judicially noticed facts on a motion

to dismiss "even if the corresponding documents are not attached to or incorporated by reference in the complaint").

## II. THE DISTRICT COURT WAS CORRECT IN DISMISSING APPELLANT'S COPYRIGHT CLAIM AS TIME-BARRED

### A. The Copyright Act Statute of Limitations and the Discovery Rule

The Copyright Act requires a civil action for copyright infringement to be "commenced within three years after the claim accrued." 17 U.S.C. §507(b). The purpose of the three-year statute of limitations, first added to the Copyright Act in 1957, is to "render uniform and certain the time within which copyright claims could be pursued." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014). Statutes of limitations such as this one further important policies such as "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The Supreme Court has long noted the public policy aspects of decisions regarding the scope of, and exceptions to, tolling doctrines and statutes of limitations. *Chavez v. Occidental Chem. Corp.*, 933 F.3d 186, 201 n.8 (2d Cir. 2019) (citing *Mills v. Habluetzel*, 456 U.S. 91, 99 (1982)) (long periods of limitations may "present a real threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims"); *Bd. Of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487

(1980) (statutes of limitations "have long been respected as fundamental to a well-ordered juridical system").

Since 2014, copyright infringement plaintiffs have had the benefit of the "Discovery Rule" in the Second Circuit. The Discovery Rule has been described as adopted by every circuit to have reached the question as an exception that has developed to the basic injury rule. *Starz Entm't, LLC v. MGM Domestic Television Distrib., LLC,* 39 F.4th 1236, 1237 (9th Cir. 2022). Under the Discovery Rule, an infringement claim "does not 'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement." *Psihoyos v. John Wiley & Sons, Inc.,* 748 F.3d 120, 124 (2d Cir. 2014).

Although most circuits today apply the Discovery Rule to copyright infringement claims, it is not exactly blackletter law. The Supreme Court, in holding that the equitable doctrine of laches could not render a claim stale so long as the claim was brought with the three-year limitations period prescribed by 17 U.S.C. §507(b), applied the Injury Rule. *Petrella*, 572 U.S. at 679. The Supreme Court stated that "[u]nder the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its *occurrence*." *Id.* at 671 (emphasis added). Its reasoning included that the statute of limitations "itself takes account of delay." *Id.* at 677. Acknowledging that many circuits have adopted the Discovery Rule in the copyright context, the Supreme Court specifically expressed

that it had not yet passed on the question and applied the Injury Rule to the case before it. *Id.* at 670 n.4; *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC.,* 580 U.S. 328, 337-38 (2017) (affirming that it had "not passed on the question" of whether the Copyright Act's statute of limitations is governed by the Discovery Rule). The Injury Rule is certainly viable when the Supreme Court still applies it.

Moreover, indications are that the Supreme Court would favor application of Injury Rule, cautioning against a cavalier judicial importation of a Discovery Rule that risks contravening congressional intent. In *Rotkiske v. Klemm,* the Court explained: "This expansive approach to the discovery rule is a 'bad wine of recent vintage.'" 589 U.S. --, 140 S. Ct. 355, 360 (2019) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 37 (2001) (Scalia, J., concurring in judgment)). It is a fundamental principle of statutory interpretation that "absent provision[s] cannot be supplied by the courts." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012). To do so "'is not a construction of a statute, but, in effect, an enlargement of it by the court.'" *Nichols v. United States*, 578 U.S. 104, 110 (2016) (quoting *Iselin v. United States*, 270 U.S. 245, 251, (1926)). The *Rotkiske* Court found the language

of the Fair Debt Collection Practices Act ("FDCPA") statute of limitations mandates an Injury Rule.[1] *Rotkiske,* 589 U.S. --, 140 S. Ct. at 360-61.

The Second Circuit has not interpreted these decisions as precluding application of the Discovery Rule to 17 U.S.C. §507(b) but has limited a defendant's damages exposure to a three-year look back period from the date of the filing of the complaint. *Sohm v. Scholastic, Inc.* 959 F.3d. 39, 50 n.2 (2d Cir. 2020). Just as statutes of limitations generally are intended to protect defendants against uncertainty and minimize "the threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims", the three year damages look-back is also "fundamental to a well-ordered juridical system," protecting defendants from unexpected liabilities and having to settle claims that they might believe have no merit for disproportionately high amounts simply because the exculpatory evidence has deteriorated and the exposure is significant.

The Supreme Court has granted *certiorari* in the case of *Warner Chappell Music, Inc. v. Nealy* on September 29, 2023 to resolve a circuit split regarding the availability of damages to a copyright plaintiff for infringement occurring more than three years before the lawsuit's filing. *See Warner Chappell Music, Inc. v. Nealy*,

---

[1] The FDCPA provides that a private civil action may be brought "within one year from the date on which the violation occurs." 15 U.S.C. §1692(k)(d).

No. 22-1078, 2023 WL 6319656 (Mem). The Eleventh and Ninth Circuits have held that so long as a plaintiff's claim is timely under the discovery rule, a plaintiff may cover unlimited retrospective relief. *Nealy v. Warner Chappell Music, Inc.,* 60 F.4th 1325, 1331 (11th Cir. 2023); *Starz Entm't, LLC,* 39 F.4th at 1246. Conversely, the Second Circuit has held that a copyright plaintiff is limited to only a three-year lookback period for damages in connection with a timely infringement claim under the Discovery Rule; the defendants are insulated from liability running back more than three years. *Sohm,* 959 F.3d at 52. The Court may then speak squarely on the open question of the applicability of the Discovery Rule, as invited to do in the petition for *certiorari.*[2]

Though the Second Circuit has followed the Discovery Rule for nine years since *Psihoyos*, the issue is still litigated and far from settled. Until the Court provides further clarity or guidance, courts in this circuit must apply the Discovery Rule mindful of and in harmony with Supreme Court precedent, dicta, and concerns as did the District Court in this case.

---

[2] Specifically, the *Nealy* Petitioner wrote: "In *Petrella*, the Court left open the question of whether the discovery rule applies in Copyright Act cases. See 572 U.S. at 670 n.4. Although a conflict in the courts of appeals has not developed on that antecedent question, this case would allow the Court to reach the question if it were so inclined and it is encompassed with the question presented above." Petition for Writ of Certiorari, *Warner Chappell Music, Inc. v. Nealy* (22-1078), at 14 n.*.

## B. MGP Did Not Allege a Plausible Viable Cause of Action

The District Court held that under prevailing law, in order for MGP's infringement claim to be viable, it must have plausibly alleged that with the exercise of due diligence it was unable to discover the infringing activity prior to August 16, 2020, three years after the alleged infringing activity began. [A 104]. Put another way, MGP's allegation that it did not actually discover the alleged infringement until February 2021 is only part of what is required to invoke the Discovery Rule; it must also be plausible from facts pled and reasonable inferences drawn, that it could not or should not have discovered the alleged infringement earlier.

MGP pled no facts tending to explain that it could not have discovered the alleged infringement sooner. MGP pled the opposite. The District Court considered only the allegations of the Complaint, inferences drawn in MGP's favor, and documents properly subject to judicial notice. [A 103-105]. In so doing, the Court found that in light of its own pleading, its sophistication and experience in searching for infringements, MGP should have discovered the alleged infringement within the three years following the infringement which was open and notorious and publicly available. *Id.*

MGP's argument that the time-bar is an affirmative defense and that MGP need not be required to anticipate and plead around an affirmative defense is a red herring. *See* MGP Br. at 8-9. It is a plaintiff's burden to plead a viable cause of action

and dismissal is appropriate if "it is clear from the face of the complaint and judicially noticed materials that plaintiff's claims are time-barred." *Hirsch v. Rehs Galleries, Inc.,* 2020 WL 917213, at *3 n.4 (S.D.N.Y. Feb. 26, 2020); *PK Music Performance v. Timberlake*, 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018) (citing *Sewell*, 795 F.3d at 339). Under the Discovery Rule a claim is time-barred if from the face of the complaint, from all reasonable inferences drawn therefrom, and from all judicially noticed materials, the claim *accrued* more than three years prior to the date the suit was brought, and under prevailing law, a claim accrues when the plaintiff "should have discovered" the infringement. *Psihoyos*, 748 F.3d at 124. It was incumbent upon MGP to plead not only that it did not actually discover the infringement until three years prior to the filing of the Complaint, but also facts that support a plausible inference that it should not have been expected to discover the infringement within the three-year period prior to the Complaint. In light of the facts it did plead about its capabilities and active searching, it failed to do so.

## C. The District Court's Dismissal Is Consistent with this Circuit's Discovery Rule Jurisprudence.

The District Court's ruling is well within established precedent in this Circuit. First, cases in which a seasoned litigator and sophisticated copyright expert have brought copyright infringement cases where the latest alleged infringement occurred more than three years prior to the date of the lawsuit, and had not pled facts tending to explain or justify the delay, have been dismissed pursuant to Rule 12(b)(6).

*Lixenberg v. Complex Media, Inc.,* 2023 WL 144663, at *2-3 (S.D.N.Y. Jan. 10, 2023) (granting 12(b)(6) dismissal because sole allegation that seasoned litigator "had no reason" prior to expiry of three-year period to know of the infringement "standing alone, is insufficient to overcome the time-bar"); *Minden Pictures, Inc. v. Complex Media, Inc.*, 2023 WL 2648027, at *3 (S.D.N.Y. Mar. 27, 2023) (same); *Minden v. Buzzfeed, Inc.,* 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) (granting 12(b)(6) dismissal because seasoned litigator "provide[d] no explanation for its delayed filing of this lawsuit beyond its allegation that it had no reason to discover the alleged infringement" within the statutory three-year limitations period). MGP does not seek to distinguish or explain the cases in any meaningful way.

Second, cases that have denied timeliness motions to dismiss invoking the Discovery Rule involve factual allegations seeking to explain the delay. For example, in *Gaffney v. Muhammed Ali Enter.,* the plaintiff alleged that he discovered infringement when he began to create his own digital presence for his photographs and his book, engaging more deeply online. *Gaffney v. Muhammed Ali Enter., LLC,* 2021 WL 3542256, at *4 (S.D.N.Y. Aug. 10, 2021). Importantly, the court noted also that the complaint alleges "separate infringing posts for each of the Subject Photographs that fall within the statute of limitations." *Id.* In *PK Music Performance v. Timberlake,* the court relies on factual assertions that the plaintiff never heard the infringing song, never purchased or possessed a copy of the infringing album or

DVD with relevant liner notes, and never attended any of the defendant's concerts or saw one on television or DVD. *PK Music Performance v. Timberlake*, 2018 WL 4759737, at *8 (S.D.N.Y. Sept. 30, 2018). Finding these assertions persuasive for an individual plaintiff uninterested in popular culture, the court found it would be unreasonable to expect it to detect the infringement earlier and denied defendants' motion on timeliness grounds. *Id.* at *11; *see also Stokes v. Honeydu, Inc.*, 2023 WL 2628685, at *2 (S.D.N.Y. Feb. 9, 2023) (denying motion to dismiss because plaintiff pled facts that explained why Plaintiff, exercising due diligence, was unable to identify infringements sooner, distinguishing from *Buzzfeed* where plaintiff provided no explanation for its delayed filing). We are aware of no case in which a seasoned litigator plaintiff alleges no facts other than a conclusory date of actual discovery more than three years past the incident of infringement – as MGP did here – that has survived a motion to dismiss.

Notably, MGP has litigated this very issue to the Ninth Circuit. In *Michael Grecco Prods., Inc. v. BDG Media, Inc.,* 834 F. App'x 353, 354 (9th Cir. 2021), the Ninth Circuit reversed a lower court's dismissal on statute of limitations grounds. In so doing, the Ninth Circuit relied on the amended complaint which "alleges facts that establish the difficulty of detecting online infringements, even when plaintiffs like Grecco invest in both in-house infringement detection using Google image search as well as third-party reverse image search software." *Id.* Without conceding

whether such boilerplate, generalized allegations would be sufficient in the Second Circuit to nudge MGP's complaint over the line from speculative to plausible, there are at least *some* allegations tending to explain why Grecco was unable to detect the infringement sooner. MGP did not allege these or similar facts in the instant complaint seeking to explain its delay.

Rather, MGP criticizes the District Court further because the Complaint was dismissed without "evidence on how MGP attempted to detect content piracy in the period; the size of its portfolio needing protection; the costs associated with the investigation the court assumed should have been performed; or whether its acknowledged efforts to detect infringements were commercially reasonable." MGP Br. at 16. MGP asserts that even though none of these speculative excuses were not raised below, the District Court "functioned as its own expert and it drew its conclusion on a technical subject without disclosing the factual basis." MGP Br. at 16-17. If any of these speculations were relevant to why MGP was unable to detect this open and notorious infringement in light of its expertise and sophistication, then it was incumbent upon MGP to so plead. But with no justification for the delay, the only inference is that MGP should have detected the infringement within the three-year period. Since *Twombly* and *Iqbal*, it is not the role of the District Court to try to imagine some set of facts that could be consistent with a plaintiff having stated a claim. The "no set of facts" standard has been retired. *Twombley,* 550 U.S. at 562.

To the contrary, it is the burden of the plaintiff to plead sufficient allegations raise a right to relief above the speculative level." *Id.* at 555.

In any event, MGP merely posits these generalized potential excuses for not timely identifying the alleged infringements hypothetically for the first time on this appeal, and as such must be disregarded by this Court. *See Tompkins v. AlliedBarton Sec. Servs.*, 424 F. App'x 42, 43 (2d Cir. 2011) ("[G]enerally this Court will not consider an issue raised for the first time on appeal."); *see also Homeless Patrol v. Joseph Volpe Fam.*, 425 F. App'x 60, 61 (2d Cir. 2011) ("We conclude that there is no reason to disregard the general rule that we will not review arguments raised for the first time on appeal.").

### D. Contrary to MGP's Arguments, the District Court's Opinion Does Not Hold MGP to a New or Different Accrual Standard.

1. MGP's Status as Sophisticated Litigant is Relevant

MGP seems to argue that its status as a sophisticated copyright expert and prolific litigant with over 134 copyright infringement suits in its name should not be relevant to the analysis of when it would be reasonable to expect it to be chargeable with knowledge of infringements. MGP Br. at 9-12. In this, MGP is wrong. Courts consider the relative sophistication and experience of parties in a copyright infringement suit and will hold a prolific infringement litigator to the standard of being able to identify infringements within the statutory period. *Minden Pictures,*

*Inc.*, 390 F. Supp. 3d at 467 ("[A] reasonable copyright holder in [plaintiff's] position – that is a seasoned litigator that has filed 36 lawsuits since July of 2010 – should have discovered, with the exercise of due diligence – that its copyright was being infringed within the statutory time period"). And this goes both ways. *See Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 354 n.8 (S.D.N.Y. 2014) (Court finds existence of other infringement lawsuits against defendant "imparts plausibility to plaintiff's copyright infringement claim").

MGP relies on *Energy Intelligence Group, Inc. v. CHS McPherson Refinery,* 300 F. Supp. 3d 1356 (D. Kan. 2018) for the proposition that a plaintiff who enforces its copyrights when infringements are found should not be held to a higher standard of "special knowledge" of copyright infringement. MGP Br. at 19. But MGP misses the point here. MGP has not been held to some "higher standard" simply because it has a policy of enforcing its rights, although its impressive number of filed cases is relevant. Here, MGP is held to have precisely the "special knowledge" about copyright infringement that it claims to have in its own complaint. If it is treated as a sophisticated expert, it is because it pled that it is one, and the allegations are taken as true on a motion to dismiss. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008).

2. "Storm Warnings" Are of Limited Use in this Case of Open and Notorious Infringement

MGP next argues that dismissal was error because the District Court did not identify evidence of "storm warnings" of this specific alleged infringement, and that it was required to do so. MGP seems to argue that without such evidence, MGP cannot as a matter of law have been put on inquiry notice of the alleged infringement. MGP Br. at 13-14 and n.3. This incorrectly assumes that defendant-specific storm warnings are the *only* means by which it is reasonable to expect a copyright to have constructive knowledge of an infringement. This is not the law.

The first step in applying the discovery rule is establishing when the injury actually occurred. *Frerck v. John Wiley & Sons, Inc.*, 2014 WL 3512991, at *6 (E.D. Pa. July 14, 2014). "Only after determining the date of injury does a court then determine whether the injury was immediately discoverable, or whether the accrual date will be postponed until it is reasonable to expect plaintiff to discover the injury." *Id.* (citing *William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d. Cir. 2009)). Further, courts have reasoned that "[i]f an infringement is initially remote, concealed or not subject to reasonable discovery by an unsuspecting copyright holder in his everyday routine, he should not lose his copyright protection unwittingly. Conversely, if the infringement is open and notorious, the copyright holder should be expected to discover it within a three year period." *Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, 2012 WL 1830129, at *2 (W.D. Mich. 2012).

Accordingly, concepts such as "storm warnings" and inquiry notice may be a "useful framework" for identifying when a reasonably diligent plaintiff might be held to begin its investigation to identify an infringed right. *Merck & Co. v. Reynolds,* 559 U.S. 633, 653 (2010). But as the cases show, such "storm warnings" are most useful when an infringement is hidden, confidential or difficult to find, or when an unsophisticated and poorly resourced plaintiff has neither the reason nor the wherewithal to investigate an infringement.

For example, in *William A. Graham Co., v. Haughey,* Haughey, a former employee at Graham, brought Graham's valuable copyrighted materials with him to his new employer and unlawfully used those materials in conducting his business with clients at the new employer. *Haughey,* 568 F.3d at 429-30. Where the evidence showed that Haughey had made multiple promises not to infringe the copyrighted material, and the infringement consisted of confidential client proposals to which Graham had no access, Graham was found not to have been on inquiry notice of the infringements. *Id.* at 440-41. That Graham knew Haughey had taken copyrighted materials did not amount to a sufficient "storm warning" requiring Graham to actively investigate whether Haughey was in fact misusing the materials with confidential clients and colleagues. *Id.* at 438-39; *see also Energy Intelligence Grp., Inc.,* 300 F. Supp. 3d at 1371 (strong storm warnings necessary because publisher of subscription industry newsletter not well positioned to identify whether a corporate

26

subscriber is disseminating the information within the organization beyond the scope of the license). These scenarios have very little application to the question of whether MGP could have identified Ruthie Davis's open and public posting of the Rose Photographs on her website.

So too with the textbook publisher cases. The question posed in those cases is when to hold a copyright licensor (artist) chargeable with knowledge that its licensee (the publisher) has exceeded the scope of the license by printing more copies than permitted or selling abroad into territories beyond the permitted geographic scope. The courts have held that it would be unreasonable to require every photographer to police its licenses continually simply because they know that some publishers tend to infringe, but rather require some specific knowledge that enables an inquiry into the hard to learn information. *See Wu v. John Wiley & Sons, Inc.,* 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015) (holding photographer Wu on notice not from generalized knowledge of publishers tending to infringe, but from date that his lawyer asked to see Wu's licenses granted to Wiley & Sons because they "got some dirt" on them).

Most fundamentally, the storm warning cases are of limited use because a storm warning is a fact that triggers an investigation. *See, Merck & Co.,* 559 U.S. at 653. But in the instant case, MGP already was investigating. In other words, the relevant question is not *whether* a duty to investigate had been triggered. The

relevant question is whether, *given* that (i) MGP *was* already investigating and scouring the internet for infringements with advanced technologies, (ii) MGP was an expert in doing so and very experienced in enforcing its copyrights, and (iii) the alleged infringement was open, notorious and publicly available, it was reasonable – or plausible – that MGP still was unable to have found the alleged infringement. The District Court correctly found no.

3. Courts Have Acknowledged That a Sophisticated Enforcer of Copyrights May Be Charged with Immediate Constructive Knowledge of Open Infringements

In finding that MGP should have identified the infringement with three years from the incident of infringement, the District Court has not departed from this circuit's jurisprudence. Cases cited by MGP that have denied motions to dismiss on statute of limitations grounds in reliance on the Discovery Rule, have expressly acknowledged that plaintiffs may reasonably be held to be on constructive notice of infringements as of the date they have access to the image searching technological tools and a practice of crawling the web for infringement. For example, in *Parisienne v. Scripps Media, Inc.* 2021 WL 3668084, at *4 (S.D.N.Y. 2021), the court denied the defendant's Rule 12(b)(6) motion on statute of limitation grounds applying the discovery rule, but importantly, distinguished the case from *Buzzfeed.* The Court noted that the plaintiff himself was not the seasoned litigator at the time of the alleged infringement and did not reject the defendants' arguments that the

accrual date of his claim might well have been either the date he "retained the Liebowitz Law Firm … to search for alleged infringements on his photographs" or the date he "brought his first action for copyright infringement [out of 26] in this district." *Id.* at *4. The Court denied the motion to dismiss because Parisienne did in fact bring his claim within three years of either of those potential accrual dates. Similarly, in *Masi v. Moguldom Media Grp. LLC*, 2019 WL 3287819, at *6 (S.D.N.Y. 2019) the court denied summary judgment on statute of limitations grounds finding that the plaintiff was not on inquiry notice that his photographs of a "luxury" prison were being infringed simply because there had been a recent spike in lawful interest in his photographs. The court did, however, observe that "…Plaintiff might arguably have been on inquiry notice of infringement in late 2015—which would still be within the limitations period—*when he started searching the internet for infringements of his works generally and then began registering his works*." *Id.* (emphasis added). And again, in *Hirsch,* 2020 WL 917213, at *5, the court acknowledges that the date that plaintiff hired a sophisticated copyright law firm that scours the internet for infringement may well have been the date that plaintiff was on inquiry notice. But like *Parisienne,* defendant's statute of limitations motion failed because applying the date when sophisticated searching began as the date of when plaintiff was on inquiry notice, the plaintiff's case was

timely. *Id.* In other words, the plaintiff did bring his action within three years of availing himself of sophisticated searching.

In stark contrast to the cases upon which MGP paradoxically relies, MGP failed to bring this lawsuit within three years of the date of infringement despite, by its own pleading, its touted active use of sophisticated search tools and expertise and experience in identifying and prosecuting infringements on the internet. MGP makes no effort to address the cases that expressly acknowledge that it would be reasonable to hold sophisticated seasoned litigators who *do* scour the internet chargeable with constructive knowledge of open and notorious online infringement.

Contrary to holding MGP to a new accrual standard, had the District Court not granted the motion to dismiss, it would have been making new law in the other direction. If a seasoned litigator who is in fact scouring the internet for infringements had no obligation to explain why an online infringement was outside of its reach to identify within three years, it would be tantamount to having no statute of limitations at all. It relieves the copyright owner of any diligence requirement and instead gives the copyright owner full permission to bury its head in the sand and ignore knowledge available to it until it feels ready to sue – whenever that may be. This contravenes the stated policies of a "well-ordered judicial system," "certainty about a defendant's potential liability", and a concern with "loss or diminution of evidence, or an increased vulnerability to fraudulent claims". *See section IIA, supra.*

### III. MGP'S REFERENCE TO THE CELEBRITY ARCHIVE PAGE IS NOT A SEPARATE ACCRUAL

MGP alleges only that "on information and belief, Ruthie Davis's use of the images begun [sic] on August 16, 2017 and continued thereafter." [A012, ¶30]. But continuing harm from a past violation is not to be confused with a separately accruing claim. *Petrella,* 572 U.S. at 671; *see also Bell v. Oakland Pools Project, Inc.,* 2020 WL 4458890 *6 (N.D. Cal. May 4, 2020) (dismissing copyright claim as time-barred including rejecting claim that archiving work that had been displayed without authorization constituted separate accrual).   MGP alleges that among other things in that continuing harm, one of the Rose Photographs was republished on the "celebrity archives page of the Ruthie Davis website." [A 011].   There is no allegation that substantiates this allegation as a "separate accrual," whether MGP knew of the date of the republishing or not.   The District Court offered MGP an opportunity to replead some fact – any fact – to support a separate accrual if it had a good faith basis to do so. [A 110].  MGP declined.  The District Court did not err in dismissing the Complaint in its entirety.

## CONCLUSION

The District Court's Opinion should be affirmed in its entirety.

KIRSCH & NIEHAUS PLLC

*/s/ Emily B. Kirsch*
Emily B. Kirsch
Paul R. Niehaus
Craig S. Tarasoff
950 Third Avenue, Suite 1900
New York, NY 10022
(212) 832-0170
Emily.kirsch@kirschniehaus.com

*Attorneys for Appellees Ruthie Davis, Inc., RADesign, Inc., Davis by Ruthie Davis, Inc., and Ruthie Allyn Davis*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because the brief contains 7,418 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

KIRSCH & NIEHAUS PLLC

*/s/ Emily B. Kirsch*
Emily B. Kirsch
950 Third Avenue, Suite 1900
New York, NY 10022
(212) 832-0170
Emily.kirsch@kirschniehaus.com

*Attorneys for Appellees Ruthie Davis, Inc., RADesign, Inc., Davis by Ruthie Davis, Inc., and Ruthie Allyn Davis*